*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re M. T. FERGUSON, Minor.

UNPUBLISHED
September 10, 2019

Nos. 347632; 347633
Muskegon Circuit Court
Family Division
LC No. 2005-034655-NA

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

In Docket No. 347632, respondent-mother appeals as of right the trial court order terminating her parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) (conditions of adjudication continue to exist) and MCL 712A.19b(3)(j) (reasonable likelihood that child will be harmed if returned to the parent). In Docket No. 347633, respondent-father appeals as of right the order terminating his parental rights to the minor child under MCL 712A.19b(3)(c)(*i*) and (3)(j). We affirm both terminations.

## I. BACKGROUND

In April 2017, the minor child was born with both cocaine and marijuana in his system. The Department of Health and Human Services (DHHS) filed a petition requesting an order removing the minor child and terminating respondent-mother's parental rights. The petition explained that, over the course of the previous 17 years, the DHHS removed respondent-mother's five other children and placed them in foster care with a goal of reunification, but respondent-mother did not reunify with any of her children because she failed to remedy her cocaine addiction.

Respondent-father's parental rights had never previously been terminated, and the April 2017 petition did not immediately request termination of his parental rights, but requested the child's removal from him because of neglect, drunkenness, and criminality. The DHHS subsequently filed an amended petition to terminate his parental rights, alleging that it was contrary to the child's welfare to remain with respondent-father because of his admitted drug abuse and relationship with respondent-mother. The amended petition requested that respondent-father's parenting time be supervised.

-1-

Both respondents pleaded guilty to the allegations in the petition and admitted using cocaine, marijuana, and alcohol while caring for the child. In return for the pleas, the DHHS agreed to withdraw the request for termination of parental rights and allow supervised parenting time. The DHHS noted, however, that it would not hesitate to petition for termination of parental rights in the future, considering respondent-mother's previous terminations and long history of drug abuse.

Over the following year, the DHHS provided respondents with numerous services intended to remedy substance abuse, lack of parenting skills, and a failure to care for the child. This included drug screens, inpatient treatment for substance abuse, psychological evaluations, and other miscellaneous services. Early on, the DHHS noted that respondents both tested positive for cocaine and respondent-mother was convicted of a drunk-driving offense. Respondent-mother's drug screens were then negative for illegal drugs for roughly seven to eight months, and she did well during supervised parenting time. Respondent-father also tested negative in his drug screens for several months after his initial positive tests for cocaine. In addition, respondent-father underwent a psychological evaluation that concluded he was only marginally capable of caring for himself because of a cognitive disability and a number of mental disorders. He also needed significant guidance regarding how to parent and care for a child.

Both respondents were compliant with services and classes, which they attended in a timely manner. Respondents also lived together in an apartment that the DHHS routinely inspected and found to be appropriate. Both respondents attended supervised parenting time together and acted appropriately, and the trial court arranged for a Christmas visit between respondents and the minor child. Yet, respondent-mother failed to attend the Christmas visit because of a fight with respondent-father, and respondent-father lied to the DHHS and the foster family regarding the reason for respondent-mother's absence.

In February 2018, respondent-mother again tested positive for cocaine. She claimed that the positive cocaine test was wrong because she was housekeeping at a hotel and there must have been residual cocaine in the area. In April 2018, respondent-mother and respondent-father again tested positive for cocaine. Respondent-mother argued that these drug-test results were false positives. After the lawyer-guardian ad litem (L-GAL) discovered that respondent-mother again tested positive for cocaine, the L-GAL filed an ex-parte motion to end her supervised parenting time. In light of these positive drug tests, the DHHS changed its recommendation from reunification to termination of parental rights and adoption. The trial court approved the filing of a petition seeking termination of respondents' parental rights.

The trial court held the three-day termination trial over the course of several months. During the trial, the DHHS presented the testimony of Dr. Joseph Auffrey, who was qualified as an expert witness in clinical psychology. Dr. Auffrey, who conducted respondent-father's psychological assessment, opined that it would be difficult for respondent-father to parent an infant and that respondent-father presented a severe risk to a child left in his care. The DHHS also called a number of witnesses who described respondents' previous interactions with the DHHS and the positive cocaine test results from both respondents. These witnesses testified about the great strides both respondents made toward recovery and parenthood, but also uniformly testified that respondents' substance abuse, dishonesty, and respondent-father's

cognitive disability posed a significant risk to the child. After respondent-mother tested positive for opioids, the trial court terminated respondent-mother's supervised parenting time, but allowed respondent-father to have unsupervised parenting time without her. Respondent-father refused to exercise parenting time without respondent-mother.

Throughout the termination trial, respondents argued that the drug-test results were false positives. In doing so, respondents' counsel elicited evidence of some irregularities in the testing process. Respondent-mother also sought a hair-follicle test to prove she was not consuming cocaine. This test came back positive for cocaine. A toxicologist testified that hair-follicle tests only indicate the presence of drugs if the subject is a chronic (i.e., daily) user. In addition, while the trial was ongoing, respondent-mother tested positive for opioids. Although respondent-mother possessed a valid prescription for these opioids, the DHHS argued that the number of doctors prescribing narcotics and the timing of these prescriptions indicated that respondent-mother was misusing prescription drugs.

During the termination trial, respondent-father's counsel established that one DHHS witness was unaware of any obligations that the DHHS had under the Americans with Disabilities Act (ADA). Respondent-father briefly alleged that he was entitled to reasonable accommodations because of his disability, but he did not pursue or develop this argument any further. Both respondents also testified at length regarding their interactions with the child, their desire to parent him, and positive steps they took toward reunification.

The trial court considered these arguments. The trial court reviewed the records of respondent-mother's prescription-drug history and agreed with the DHHS that, although a substance may be legal to use, evidence of misuse of prescription drugs existed in this case. Considering her misuse of prescription drugs combined with the past terminations for drug abuse and the positive drug screens, the trial court found that substance abuse continued to be a problem for respondent-mother.

Regarding respondent-father, the trial court considered Dr. Auffrey's testimony combined with respondent-father's statement that he would stand by respondent-mother regardless of her ongoing drug use. The trial court found that returning the minor child to his care would place the child in an identical risk of harm as the conditions that led to the initial adjudication in this case.

Therefore, the trial court concluded that the DHHS met its burden of proving statutory grounds for termination of respondents' parental rights under MCL 712A.19b(3)(c)(*i*) and (3)(j) for both respondents. In addition, the trial court held that termination of respondents' parental rights was in the child's best interests, citing the child's bond to the foster family and the length of time that had passed since the child's removal from respondents' care.

## II. ANALYSIS

### A. STATUTORY GROUNDS FOR TERMINATION

On appeal, both respondents argue that the trial court erred when it concluded that statutory grounds existed to terminate their parental rights. The trial court terminated both

respondents' parental rights to the child under MCL 712A.19b(3)(c)(*i*) and MCL 712A.19b(3)(j). We conclude that the trial court did not clearly err in finding, by clear and convincing evidence, that these statutory grounds for termination existed for both respondents.

"In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). To be clearly erroneous, a trial court's determination "must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011). "A finding is clearly erroneous if, although there is evidence to support it, this Court is left with a definite and firm conviction that a mistake has been made." *Id*. In reviewing the trial court's determination, this Court must give due regard to the "special opportunity of the trial court to judge the credibility of the witnesses who appeared before it." *Id*., citing MCR 2.613(C).

### 1. MCL 712A.19b(3)(c)(*i*)

MCL 712A.19b(3)(c)(*i*) authorizes a trial court to terminate parental rights if the court finds, by clear and convincing evidence, that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> > (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

The statutory basis to terminate parental rights under MCL 712A.19b(3)(c)(*i*) exists "when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services." *In re White*, 303 Mich App at 710 (cleaned up). Termination of parental rights is proper under MCL 712A.19b(3)(c)(*i*) when "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change in the conditions" that led to adjudication. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009).

Both respondents concede that the trial court entered the initial dispositional order in this case more than 182 days before the trial court's order terminating respondents' parental rights. Therefore, the question on appeal is whether the conditions that led to the adjudication continued to exist and whether there was no reasonable likelihood that the conditions would be rectified within a reasonable time considering the child's age.

Regarding respondent-mother, the ongoing condition that led to adjudication was her substance abuse and the termination of her parental rights to her prior children. She tested positive for cocaine on February 2 and April 13, 2018—after the DHHS provided a year of

services intended to mitigate her long history of drug abuse. Respondent-mother's dishonesty in denying the positive drug-test results and her implausible explanations also weigh against her, indicating that she was not benefiting from services. Although she claimed that the positive drug screens were wrong, her own attempts to mitigate this evidence with a hair-follicle test showed that she was a *chronic* cocaine user. As the toxicologist explained, occasional drug use would not result in a positive hair-follicle test, but chronic drug use would cause that result. Finally, the trial court noted that respondent-mother's valid prescriptions came from a suspiciously high number of doctors, and considered this evidence of prescription drug abuse. This indicates that, although respondent-mother mitigated other issues (e.g., her homelessness), "the totality of the evidence amply supports that [the respondent] had not accomplished any meaningful change" in her substance abuse. See *In re Williams*, 286 Mich App at 272. In light of our deference to the trial court's ability to judge credibility and the evidence, the trial court did not err in finding that these positive drug screens were accurate and that respondent-mother failed to remedy her drug abuse. See *In re HRC*, 286 Mich App 444, 459; 781 NW2d 105 (2009). Furthermore, in light of respondent-mother's 17 years of substance-abuse services through previous terminations, the trial court did not err in finding there is no reasonable likelihood that the conditions will be rectified within a reasonable time.

Regarding respondent-father, the ongoing condition that led to the adjudication was his use of illegal drugs and his relationship with respondent-mother, who had a long-term substance-abuse problem. As discussed earlier, the trial court did not err in finding that respondent-mother's substance abuse was an ongoing condition. By extension, the trial court did not err in finding that respondent-father's refusal to separate from respondent-mother was an ongoing condition. Respondent-father admitted that he would not leave respondent-mother if her parental rights were terminated. Respondent-father also refused to exercise unsupervised parenting time with the minor child without respondent-mother because he believed her denials of drug use. This devotion to respondent-mother indicates that respondent-father's entanglement with her was ongoing and unlikely to change within a reasonable time frame. Our Supreme Court previously acknowledged that association with an individual who caused or may cause harm to a minor child may be a condition of adjudication under MCL 712A.19b(3)(c)(*i*). See *In re Sours*, 459 Mich 624, 636; 593 NW2d 520 (1999). Respondent-mother already harmed the minor child in this case by introducing the cocaine and marijuana that existed in his system at birth. It was not unreasonable for the trial court to conclude that respondent-father's ongoing relationship with her would cause a similar harm and that this relationship was not likely to be remedied in a reasonable amount of time. The trial court did not err in finding that statutory grounds existed to terminate parental rights under MCL 712A.19b(3)(c)(*i*).

## B. MCL 712A.19b(3)(j)

The trial court also found that statutory grounds existed to terminate respondents' parental rights under MCL 712A.19b(3)(j). This statutory section authorizes a trial court to terminate parental rights if the court finds, by clear and convincing evidence, that "[t]here is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." MCL 712A.19b(3)(j).

It is well established that a respondent's substance abuse and addiction may create a reasonable likelihood of harm to the minor child. See *In re Beers/LeBeau-Beers*, 325 Mich App

653, 683; 926 NW2d 832 (2018). Respondent-mother tested positive for cocaine on February 2 and April 13, 2018—approximately a year after the present case began. Although she argued that these drug-test results were false positives, this Court gives "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459. The trial court believed that respondent-mother used cocaine at least twice during the time leading up to the termination trial. In addition, the trial court's analysis of her narcotic-drug prescriptions from multiple doctors led to the trial court to conclude that responded-mother was abusing prescription drugs. Finally, it is relevant that respondent-mother tested positive for cocaine, which was the basis for respondent-mother's previous terminations and which was present in the minor child's system at birth. Therefore, respondent-mother's cocaine use had already harmed the minor child and previously harmed her other children. It is not unreasonable to believe that respondent-mother's substance abuse could cause harm again if not remedied. See *In re Moss*, 301 Mich App 76, 82; 836 NW2d 182 (2013).

In the aggregate, over the course of her previous terminations for substance abuse, the DHHS provided respondent-mother with 17 years of services to mitigate her substance abuse. Because she tested positive twice for cocaine and was misusing prescription drugs during these proceedings, she did not demonstrate the necessary change to avoid termination of her parental rights. In light of the clear and convincing evidence on the record, the trial court did not err in finding that respondent-mother's continuing substance abuse created a reasonable likelihood of harm to the minor child.

Nor did the trial court err in terminating respondent-father's parental rights because clear and convincing evidence was presented that his cognitive disability combined with his relationship with respondent-mother would cause harm to the minor child. In this regard, we must first address a passing argument made in the trial court regarding respondent-father's disability and the obligations of the DHHS under the ADA.

Dr. Auffrey's evaluation of respondent-father noted both cognitive deficiency and schizoaffective disorder. Respondent-father's disability and inability to care for the minor child provided the core of the DHHS's argument for termination throughout the proceedings. The L-GAL also cited respondent-father's disability in its argument for termination. Respondent-father raises *In re Hicks/Brown*, 500 Mich 79; 893 NW2d 637 (2017), in which our Supreme Court made clear that the DHHS has a heightened duty to make "reasonable modifications to the services or programs offered to a disabled parent." *Id*. at 86. This is an affirmative duty, triggered upon the DHHS's knowledge of a respondent-parent's disability. See *id*. at 87-88.

It is clear from the record that the DHHS knew of respondent-father's disability. Respondent-father, however, failed to pursue this issue in the trial court or fully develop it on appeal. At no time in the trial court did respondent-father complain about a lack of services tailored to his disability. Because respondent-father has not specified what accommodation he needed that was not provided, it is unclear whether he faced any prejudice from his disability. Furthermore, it is unclear what services the DHHS could have offered that would have remedied the underlying condition: respondent-father's ongoing relationship with respondent-mother. The only method available to the DHHS to remedy respondent-father's relationship with respondent-mother was to remedy respondent-mother's substance abuse. As described earlier, the DHHS attempted this, but respondents continued to use drugs and failed to admit their relapses indicated

-6-

by positive drug tests. Because respondent-father has not explained how further services would have assisted him, he has not shown error.

This Court gives "deference to the trial court's special opportunity to judge the credibility of the witnesses." *In re HRC*, 286 Mich App at 459. This extends to descriptions of respondents' relationship as toxic and unhealthy for a minor child. A toxic relationship with an individual who poses a risk of harm to a minor child may be considered grounds for termination. In this case, the trial court did not err in concluding that respondent-father's relationship with respondent-mother was harmful to the child. Respondent-father refused to exercise unsupervised parenting time with the minor child without respondent-mother because he believed her denials of drug use. This parenting time was an opportunity for respondent-father to mitigate the DHHS's concerns that he was unable to care for the child alone. Rather than take advantage of this, respondent-father chose to stay with respondent-mother to the detriment of his own relationship with the child. It is also relevant that, as the L-GAL explained, the two respondents relapsed in their drug use at the same time. Witnesses opined that if respondent-father separated from respondent-mother, he might make progress, but respondent-father refused to do so.

Furthermore, respondent-father's refusal to separate from respondent-mother despite her drug-seeking behavior would have placed the minor child at the same risk that resulted in the termination of respondent-mother's parental rights. This is particularly concerning because respondent-father claimed that he would not leave respondent-mother even if her parental rights were terminated. It would defeat the purpose of terminating the parental rights of respondent-mother if respondent-father's relationship with her could serve as an avenue for her drug-seeking behavior to continue harming the child. In light of this, the trial court did not clearly err in determining that respondent-father's decision to retain his relationship with respondent-mother created a reasonable likelihood of harm under MCL 712A.19b(3)(j).

## C. THE MINOR CHILD'S BEST INTERESTS

Respondents next challenge the trial court's decision regarding the minor child's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). A preponderance of the evidence is that which when weighed with the evidence that opposes it has "more convincing force and the greater probability of truth." *People v Cross*, 281 Mich App 737, 740; 760 NW2d 314 (2008). This Court reviews a trial court's ruling regarding best interests for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016).

The trial court should weigh all the evidence available to determine a child's best interests. *In re White*, 303 Mich App at 713. In considering the child's best interests, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App at 87. "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App at 41-42 (cleaned up). "The trial court may also consider a parent's history of

domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. Furthermore, the trial court may also consider how long the child has lived in his present home and the likelihood that the child "could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5).

In this case, the trial court did not err in finding that the best-interest factors weighed in favor of terminating the parental rights of both respondents. The child was born with cocaine in his system as a direct result of respondent-mother's decisions. The minor child was in the custody of his current foster family for the entirety of his life. This same family was also the adopted home of the child's siblings, which created a unique opportunity for bonding. Testimony throughout the proceedings established that the child was doing well in foster care and was bonded to his foster family and siblings. Testimony described the foster household as a very happy and playful environment; the minor child was described as active, crawling, and playful. The conditions at the foster home weighed heavily in favor of termination and adoption.

Respondents' home was appropriate and their ability to care for the minor child improved over the span of these cases. As discussed earlier, however, the trial court did not err in recognizing that respondents' continued struggle with substance abuse created a reasonable likelihood of harm should the minor child return to their care. In light of the child's established bonds with the foster family, that foster family's established parenting ability, and the advantages provided by foster care, it would be contrary to the minor child's need for permanency and stability to uproot him now. See *In re Olive/Metts Minors*, 297 Mich App at 41-42. The ongoing risk of relapse by respondents was too great and would have interfered with the minor child's need for stability and permanency. Although respondents both made some progress, the length of time and the minor child's interests in long-term stability supported termination of respondents' parental rights. Therefore, the trial court did not clearly err in terminating respondents' parental rights.

Affirmed.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly